SECOND DISTRICT—APRIL, 1916.          315

John Hancock Mut. Life Ins. Co. et al. v. Watson, 200 Ill. App. 315.

# John Hancock Mutual Life Insurance Company and C. R. Miller, Receiver, et al., Appellees, v. William H. Watson, Appellant.

## Gen. No. 6,145.

1. LANDLORD AND TENANT, § 526*—*when landlord renting on shares has title to crop.* Where a landlord is to receive as rent a share of the crop, which is to be delivered to him, he has no title to the crop until it is delivered.

2. LANDLORD AND TENANT, § 526*—*when presumed that landlord has title to crops mortgaged by him.* In the absence of evidence to the contrary, it will be presumed that a landlord who mortgages growing crops has title to them.

3. MORTGAGES, § 134*—*when crops covered by mortgage on land.* Crops growing upon mortgaged lands are covered by the mortgage, whether planted before or after its execution, and until they are severed the mortgage attaches as well to the crops as to the land, and if the land be sold for condition broken before severance, the purchaser is entitled to the growing crops, not only as against the mortgagor but as against all persons claiming in any manner through or under him subsequent to the recording of the mortgage.

4. MORTGAGES, § 134*—*when mortgagor entitled to crops.* Until foreclosure or possession taken by a mortgagee of crops for the breach of condition, the mortgagor is entitled to the crops.

5. MORTGAGES, § 134*—*what interest mortgagee of growing crops receives.* The mortgagor in possession before condition broken cannot, by mortgage, convey to a mortgagee a better title to a greater right in growing crops than he, the mortgagor, has.

6. RECEIVERS, § 18*—*what interest receiver for real estate acquires.* A receiver for mortgaged real property acquires only the rights of the mortgagor therein.

7. MORTGAGES, § 134*—*what does not constitute severance of crops from realty.* The giving of a chattel mortgage upon growing crops does not constitute a severance of the crops from the real estate as between the mortgagee of the crop and the holder of the real estate mortgage on the land.

Appeal from the Circuit Court of Kankakee county; the Hon. ARTHUR W. DESELM, Judge, presiding. Heard in this court at the October term, 1915. Affirmed. Opinion filed April 14, 1916.

---

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

EDWARD P. HARNEY, for appellant.

DYER & WHITTEMORE and REARICK & MEEKS, for appellees.

MR. JUSTICE CARNES delivered the opinion of the court.

June 9, 1914, Gertrude Gordon was the owner of 875 acres of farm land in the County of Kankakee, subject to a mortgage of $27,000 to the appellee, John Hancock Mutual Life Insurance Company, and a junior mortgage to another party for $38,700. The land was rented by her in parcels to different tenants at share rent. (The terms of the leasing are not disclosed.) On that day she executed a chattel mortgage to William H. Watson, the appellant, on her interest in acreage of growing crops described as: "½ of 50 acres of timothy meadow; 40 per cent. of 200 acres planted in oats; 40 per cent. of 300 acres planted in corn." Each of these mortgages was properly acknowledged and recorded.

September 4, 1914, a bill was filed to foreclose the junior real estate mortgage. October 31, 1914, the John Hancock Company filed its bill to foreclose the senior mortgage; and on November 5, 1914, the court on petition of the John Hancock Company, appointed appellee, C. R. Miller, receiver for the purpose of collecting the rents, issues and profits of the premises pending the foreclosure proceeding. The mortgage contained an express provision authorizing such appointment and the application of the rents to the payment of the mortgage indebtedness. The receiver immediately qualified and entered upon his duties. Watson got possession of the oats described in his mortgage and sold them about August 21, 1914, and applied the proceeds on his debt, leaving about $560 unpaid, and November 21, 1914, he filed an intervening petition in the foreclosure suit setting out his chattel

mortgage, his right under its terms to take possession of the property if he should feel himself insecure, alleging that there was then unpaid $580 of the indebtedness; that the security was scant and unsafe, alleging that Miller, the receiver, had assumed control and ownership over the crops mentioned in the chattel mortgage, and averring that he, Watson, by virtue of his said chattel mortgage, had a prior lien upon said chattel property, praying that the receiver be ordered to harvest and market the property, and apply the proceeds, so far as necessary, to the payment of the chattel mortgage debt. The receiver answered, denying Watson's prior right. The court, on a hearing, denied the petition, and Watson appeals.

On the hearing it developed that corn described in the chattel mortgage had been harvested and sold for $696.80 after the intervening petition was filed, and the inquiry was directed to the title to this corn. There is no question that the receiver was properly appointed and had full power to act, and no controversy about the facts. In addition to those above stated, appellant testified that the oats were delivered to him for shipment (August 21, 1914) by John Rattin, who was a tenant on one parcel of the real estate, whether the parcel on which the corn was grown does not appear, and that he, appellant, then told Rattin about his chattel mortgage, what property it covered, and asked him to look after the property, and that he did nothing further by way of taking possession of it. There is no evidence that Rattin did anything whatever by way of exercising any acts indicating ownership of appellant except that appellant testified that Rattin looked after the property for him, evidently referring to the fact that he told him to and the assumption that he might have done it. There is nothing in the record that shows, or tends to show, that appellant took possession of the corn in question before he filed his intervening petition.

It is suggested by appellee that Gertrude Gordon had no title to the crop that she mortgaged; that the rule is that when the landlord receives as rent a share of the crop he has no title to the crop until it is harvested. This is true in ordinary cases where rent is paid by delivering a share of the crop. (24 Cyc. 1067.) But there are many kinds of contracts under which tenants occupy land and divide the proceeds with their landlords. (24 Cyc. 1464.) The record does not show whether the several tenants of the land in question were operating under a lease where the share of the crop was to be harvested and delivered in payment of rent. The assumption most favorable to appellant is that Gertrude Gordon owned that part of the crop which she mortgaged to appellant. We will consider the case on that presumption.

Appellant correctly says that the rule is: ''That the crops growing upon mortgaged lands are covered by the mortgage, whether planted before or after its execution, and until they are severed the mortgage attaches as well to the crops as to the land. And if the land be sold for condition broken before severance, the purchaser is entitled to the growing crops, not only as against the mortgagor, but as against all persons claiming in any manner through or under him subsequent to the recording of the mortgage.'' (27 Cyc. 1144.) It is also true, as he says, that until foreclosure or possession taken by the mortgagee for breach of condition, the mortgagor is entitled to the crops. But we think he is in error in assuming from this undoubted statement of the law that the mortgagor in possession before condition broken may, by sale or mortgage, convey to a purchaser or mortgagee a better title to and greater rights in the growing crops than he, the mortgagor, has. We suppose no one would contend that Gertrude Gordon, had she not mortgaged the corn in question, could have prevented the receiver

from taking possession of it and converting the proceeds under his receivership. It is no doubt true that the receiver acquires only the right of the mortgagor in the property, but it is equally true that a mortgagee can take no better title than the mortgagor himself had. It is said in 27 Cyc. 1729: "It has been held, however, that there must be an actual severance of the crop, and that the mortgagor cannot defeat the right of the foreclosure purchaser to the crop by selling it, without cutting, before the foreclosure, nor by giving a chattel mortgage on it." While the author states this proposition as though there might be doubt about it, he cites *Rankin v. Kinsey,* 7 Ill. App. 215, among other cases supporting that doctrine, and the case supports the text. It was reaffirmed by the same court in *Sugden v. Beasley,* 9 Ill. App. 71, 77: "That if the land be sold for condition broken before severance, the purchaser will be entitled to the growing crops, not only as against the mortgagor, but against all persons claiming in any manner through or under him subsequent to the recording of the mortgage." And again in *Yates v. Smith,* 11 Ill. App. 459, the same court, by the same judge, affirmed the right of the purchaser at a foreclosure sale against all persons claiming in any manner through or under the mortgagor subsequent to the recording of the mortgage, citing many authorities. It was held in *Anderson v. Strauss,* 98 Ill. 485, that while between the parties to a judgment the seizure and sale of growing wheat upon execution issued upon the judgment will constitute a severance of the crop from the realty, yet as to a grantee in a deed of trust given by the execution debtor before the execution became a lien, such seizure and sale will not work a severance, and that the purchaser at the sheriff's sale takes subject to the rights of the grantee under the trust deed, which will not be cut off or affected by such sale. If there was no severance of the crop before the receiver was appointed

in the present case, there is no question under the
authorities that the court was right in dismissing ap-
pellant's petition. Authorities may be found to the
effect that a sale or mortgage of a growing crop works
a severance and is to be treated as such on contest be-
tween the purchaser, or mortgagee of the crop, and
the holder of the real estate mortgage on the land.
But we are referred to no case in this State so holding,
and know of none, and it seems inconsistent with the
rule announced in *Anderson v. Strauss, supra.* We are
of the opinion that the court did not err in dismissing
the petition, and that the order and judgment should
be affirmed.

*Affirmed.*